# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION

**JOSE REYES-RIVERA,**
**A# 087-432-029,**

    Petitioner,

vs.                                              Case No. 4:18cv223-RH/CAS

**JEFF SESSIONS, et al.,**

    Respondents.

_____/

## REPORT AND RECOMMENDATION

Petitioner, proceeding pro se, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 on April 30, 2018. ECF No. 1. Petitioner was granted leave to proceed in forma pauperis and his petition was reviewed. Petitioner alleged that he is a native of Nicaragua who was taken into ICE custody on November 16, 2016. *Id.* at 3. Petitioner was previously ordered removed from the United States on November 9, 2009, *id.,* and he states that he waived his right to appeal. *Id.* at 4. Petitioner said he had been held in detention for 17 months and the Nicaraguan Embassy had failed to issue travel documents. *Id.* at 4-5. Because the

presumptively reasonable removal period ended a year ago, Petitioner sought release from detention pursuant to Zadvydas v. Davis, 533 U.S. 678 (2001). Id. at 5-6.

Finding the petition sufficient, service was directed and Respondents required to show good cause why the petition should not be granted. ECF No. 5. In response Respondents assert that the petition should be denied because Petitioner "has frustrated his removal by, among other things, not cooperating with ICE and the Nicaraguan Consulate." ECF No. 10.

An Order was entered in July 2018, providing Petitioner with an opportunity to file a "Reply" and address the arguments raised by Respondents. Petitioner was given until **August 14, 2018**, to do so, but as of this date, nothing has been received from Petitioner.

**Relevant Facts**

Petitioner illegally entered the United States near El Paso, Texas, on or about April 1, 1992, as an adult. ECF No. 10, Ex. 1 (Luna Declaration). Deportation Officer Luna states that Petitioner was approximately 31 years of age at that time. Id. at 1. In April of 2009, Petitioner was arrested on a charge of aggravated battery. Id. at 2. He was interviewed by ICE officials at the Suwannee County Jail. Id. At that time, Petitioner claimed to be a citizen of El Salvador, although Officer Luna declares that Petitioner is a

native and citizen of Nicaragua, *id.* at 1-2, and that was Petitioner's claim in the petition filed in this case.  On May 1, 2009, ICE charged Petitioner with removability under the Immigration and Nationality Act.  *Id.*  During Petitioner's hearing before an immigration judge, he denied being a citizen of El Salvador and admitted that he was born in Nicaragua and was a citizen of Nicaragua.  *Id.*  On November 9, 2009, Petitioner was ordered removed by an immigration judge.  *Id.*  Petitioner initially filed an appeal of that decision, but the Board of Immigration Appeals dismissed the appeal and the removal order became final on January 22, 2010.  *Id.*

Petitioner was convicted of the aggravated battery charge and sentenced to five years incarceration.  *Id.* at 3.  Upon his release, he was taken into ICE custody.  *Id.*  On November 14, 2016, ICE requested a travel document for Petitioner from the Consulate General of Nicaragua.  *Id.*  The following month, the Consulate advised that Petitioner's Nicaraguan citizenship could not be verified.  *Id.*

Petitioner then refused to complete a Post Order Custody Review questionnaire and refused to provide information to assist in his removal.  *Id.* at 4.  Despite notifications advising Petitioner of his responsibility to assist, he has refused to do so.  *Id.*  Petitioner has claimed to "have no family members, contact information, or any other information from

Nicaragua that could assist in obtaining a travel document." *Id.* Petitioner could not provide basic information concerning "his birth place, cultural customs, relatives within Nicaragua, or provide other biographical information." *Id.* at 5.

A month later, Petitioner admitted that his wife and three sons still resided in Nicaragua. *Id.* at 5. He also said he was registered with the Nicaraguan Military and National Police because of a prior job he held at the Port of Corinto. *Id.*

In June of 2017, the Consulate advised that Petitioner was "not a registered citizen of Nicaragua." *Id.* at 5. ICE advised Petitioner that his case would be treated as a "Failure to Comply" (FTC) case. *Id.* at 4, 6. Petitioner was requested to provide additional information, but on October 18, 2017, he "refused to provide any assistance." *Id.* at 6. In November, the request was again given to Petitioner who again refused to provide any assistance. *Id.* Similar requests have been made and refused on January 9, 2018, February 8, 2018, March 7, 2018, April 9, 2018, and June 6, 2018. *Id.* at 6-7. Petitioner "is currently refusing to assist ICE in submitting a new request for a travel document, is refusing to speak to the Consulate, and appears to have intentionally given conflicting information in previous interviews with the Consulate in order to prevent his removal." *Id.* at 7.

**Analysis**

Petitioner is not challenging the final order of removal in this § 2241 petition but, rather, seeks release from detention pursuant to <u>Zadvydas v. Davis</u>, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001). This Court has jurisdiction over this petition.

In <u>Zadvydas</u>, the United States Supreme Court was asked to decide whether 8 U.S.C. § 1231(a)(6) authorized indefinite detention of a removable alien.[1] The Court held that the continued detention of legal permanent aliens beyond the mandated 90-day removal period was permissible under the Constitution, but only for as long as was "reasonably necessary to bring about that alien's removal from the United States." <i>Id.</i>, at 689, 121 S. Ct. at 2498. The Court concluded that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." <i>Id.</i>, at 699, 121 S.Ct. at 2503. For the sake of uniform administration by the federal courts, the <u>Zadvydas</u> Court held that "the presumptive period during which the detention of an alien is reasonably necessary to effectuate his removal is six months; after that, the alien is eligible for conditional release if he can demonstrate that there is 'no

---

[1] Section 1231(a)(1)(A) provides that the government has a 90-day "removal period" to remove an alien ordered removed from the United States. 8 U.S.C. § 1231(a)(1)(A).

significant likelihood of removal in the reasonably foreseeable future.'" Clark v. Martinez, 543 U.S. 371, 125 S.Ct. 716, 722, 160 L.Ed.2d 734 (2005) (quoting Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505).

In Clark v. Martinez, the Court extended its interpretation of 8 U.S.C. § 1231(a)(6) to inadmissible aliens.[2] The Court concluded that there was no reason why the period of time reasonably necessary to effect removal would be longer for an inadmissible alien than for an admissible alien. Clark, 543 U.S. at 386, 125 S.Ct. at 727. Thus, the Court held that the 6-month presumptive detention period prescribed in Zadvydas should be applicable. *Id.* Accordingly, under Clark and Zadvydas, when an alien shows he has been held more than six months beyond the removal period and his removal is not reasonably foreseeable, a § 2241 petition should be granted. Clark, 543 U.S. at 386-387, 125 S.Ct. at 727; Benitez v. Wallis, 402 F.3d 1133, 1135 (11th Cir. 2005) (relying on Clark to hold that "an inadmissible alien can no longer be detained beyond the statutory 90-day

---

[2] The relevant statute provides: "An alien ordered removed who is inadmissible under section 1182 of this title, removable [for violations of nonimmigrant status or entry conditions, violations of criminal laws, or threatening national security] or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6) (quoted in Benitez v. Wallis, 402 F.3d 1133, 1134 (11th Cir. 2005)).

removal period of § 1231(a)(1), where there was no significant likelihood of removal in the reasonable foreseeable future.").[3]

Zadvydas established a burden-shifting analysis for consideration of § 2241 habeas petitions. After the presumptive six month removal period has expired, an alien must provide "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. Thereafter, "the Government must respond with evidence sufficient to rebut that showing." *Id.*

Here, Petitioner met his initial burden under Zadvydas based on the factual allegations in the petition. ECF No. 1. Petitioner alleged that he had "fully cooperated with all efforts by ICE to remove Petitioner from the United States, and has provided ICE with all information about when and where he was born." ECF No. 1 at 5. He alleged that his continued detention violated his constitutional rights. *Id.* at 7. He also claimed that removal was "not likely to occur in the reasonably foreseeable future." *Id.* at 8.

The burden shifted to Respondents to rebut that showing and demonstrate there is a significant likelihood of removal in the reasonably

---

[3] An alien must be detained during the "removal period." 8 U.S.C. § 1231(a)(2).

foreseeable future.  Respondents have also met their burden. Respondents have come forward with evidence which shows that Petitioner has refused to cooperate in the removal process.  Respondents have shown that Petitioner has acted to prevent his removal by providing contradictory information.

The relevant statute provides that the "removal period may be extended and the alien may remain in detention, 'if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.'"  8 U.S.C. § 1231(a)(1)(C) (quoted in Vaz v. Skinner, 634 F. App'x 778, 781 (11th Cir. 2015)).  When the alien has been the cause of his own delay, habeas relief is properly denied.  See Sango-Dema v. District Director, I.N.S., 122 F.Supp.2d 213 (D. Mass. 2000) (concluding that "an alien cannot trigger [a constitutional right to be free from indefinite detention by the INS] with his outright refusal to cooperate with INS officials.").

In Powell v. Ashcroft, 194 F.Supp.2d 209 (E.D.N.Y. 2002), a case decided in the wake of Zadvydas, the court noted that Zadvydas was concerned with the constitutionality of § 1231(a)(6) where aliens were in "'deportation limbo because their countries of origin had refused to allow

[them] entrance.'" Powell, 194 F.Supp.2d at 211 (citing Sango-Dema, 122 F.Supp.2d at 221 and explaining Zadvydas). The court held that Zadvydas was inapplicable because it "did not discuss the constitutionality of Section 1231(a)(1)(C) and the tolling of the removal period during the time of an alien's non-cooperation." Powell, 194 F.Supp.2d at 212 (citing Guner v. Reno, 2001 WL 940576 (S.D.N.Y. Aug. 20, 2001)). Thus, where an alien's actions or refusal to act thwarts his removal, and where it is likely that he could be removed if he cooperated, a habeas petition should be denied. Powell, 194 F.Supp.2d at 212.

The Eleventh Circuit has also affirmed that a three year period of detention is not unreasonable when "Petitioner's own acts and failure to make timely application in good faith for travel documents has prevented his removal." Vaz, 634 F. App'x at 782. When Petitioner acts to prevent his own removal, he is responsible for his own prolonged detention. "Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with" ICE and answers the questions posed to him with truthful information. 634 F. App'x at 782; see also Archibald v. I.N.S., 2002 WL 1434391, *8 (E.D.Pa. July 1, 2002) (finding the case factually distinguishable from Zadvydas where

Case 4:18-cv-00223-RH-CAS   Document 13   Filed 10/04/18   Page 10 of 11

Page 10 of 11

"Archibald's detention [was] a direct result of his seeking relief from deportation" and holding that because his indefinite detention was a result of his requesting a stay, he could not "be heard to complain[] that the time period during which he has been detained constitute[d] a denial of due process."); Thevarajah v. McElroy, 2002 WL 923914 (E.D.N.Y. Apr. 30, 2002) (holding that petitioner's nearly five years in INS custody was constitutional under Zadvydas because the continued detention was lengthened largely because of petitioner's own actions); Linares v. Dep't of Homeland Sec., No. 4:13-CV-01501-WMA, 2014 WL 644382, at *5 (N.D. Ala. Feb. 19, 2014) (holding that petitioner's refusal to board flights to Venezuela tolled the removal period and dismissing habeas petition).

    Here, Respondents' unrebutted evidence shows that Petitioner has not cooperated in removal efforts. He has given contradictory information and has refused to answer additional questionnaires. Petitioner cannot complain about his continued detention because he is the cause for the delay. Petitioner has not made the required showing that it is not significantly likely that his removal could be carried out in the reasonably foreseeable future. Zadvydas, 533 U.S. at 701, 121 S.Ct. at 2505. Accordingly, the § 2241 habeas petition should be denied without prejudice.

## RECOMMENDATION

It is respectfully **RECOMMENDED** that Petitioner's petition for writ of habeas corpus, ECF No. 1, be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on October 4, 2018.

 S/     Charles A. Stampelos
**CHARLES A. STAMPELOS
UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**